UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JASMON CORDE JOHNSON, ,        )
AIS #248192,                   )
                               )
        Plaintiff,             )
        vs.                    )        CIVIL ACTION NO.
                               )        2:07-CV-614-WKW
STATE OF ALABAMA               )
DEPARTMENT OF CORRECTIONS,     )
et al.                         )
        Defendants.            )

## ANSWER and SPECIAL REPORT

Come now Defendants in the above styled cause, by and through undersigned counsel, and

submit this Answer and Special Report as ordered by this Honorable Court.

## NAMED DEFENDANTS

1. Warden James DeLoach

2. Deputy Warden Phyllis Billups

3. Lt. James E. Steele

4. Officer Michael Boozer

5. Officer Robert J. Bradford

6. Officer David Golson

## ANSWER

Defendants assert the following defenses to Plaintiff's claims:

1. Defendants deny each and every material allegation contained in Plaintiff's Complaint and

   demand strict proof thereof.

2. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

3. Defendants cannot be held liable on the basis of *respondeat superior*, agency, or vicarious

   liability theories.

1

4.  Plaintiff is not entitled to any relief under 42 U.S.C. §1983.

5.  The allegations contained in Plaintiff's Complaint against Defendants, fail to comply with the heightened specificity requirement of Rule 8 in §1983 cases against persons sued in their individual capacities. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Arnold v. Board of Education of Escambia County Ala.*, 880 F.2d 305, 309 (11th Cir. 1989).

6.  Defendants plead all applicable immunities, including but not limited to sovereign, qualified, absolute, discretionary function, state agent, and statutory law enforcement officer immunity.

7.  All claims of Plaintiff against these Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

8.  Defendants plead the affirmative defense of waiver, contributory negligence and assumption of the risk.

9.  Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. §1997e (a) and as such these claims should be dismissed.

10. Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

11. Plaintiff has failed to comply with 28 U.S.C. §1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

12. Pursuant to 28 U.S.C. §1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from

Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. §1997 (e) (c).

## EVIDENTIARY SUBMISSIONS

1. Affidavit of Warden James Deloach with attachments. (Exhibit A).

2. Affidavit of Deputy Warden Phyllis Billups. (Exhibit B).

3. Affidavit of Lt. James E. Steele. (Exhibit C).

4. Affidavit of Officer Robert J. Bradford. (Exhibit D).

5. Affidavit of Officer David Golson. (Exhibit E).

6. Affidavit of Officer Michael Boozer. (Exhibit F).

7. Institutional Incident Report, including witness statements and medical "body chart". (Exhibit G).

## PLAINTIFF'S ALLEGATIONS

Plaintiff, an inmate in the Alabama Department of Corrections (ADOC), incarcerated at Draper Correctional Institution in Elmore County, complains that on March 4, 2007, Officer Michael Boozer assaulted him at approximately 10:45 PM while in the presence of Officers Robert Bradford and David Golson, who did not intervene.

Plaintiff alleges that he was slapped, grabbed around the throat and choked, and that Officer Boozer slammed him up against the wall, striking a pole that was sticking out. He alleges that Officer Boozer then threw him to the floor.

Plaintiff's Count II alleges that Warden Deloach, Deputy Warden Billups, Lt. Steele, Officer Golson and Officer Bradford were deliberately indifferent to his safety, and failed to protect him from being assaulted by Officer Boozer.

Plaintiff Johnson asks that Officers Boozer, Bradford and Golson be "dismissed from duties" and damages in the amount of $500,000 from each defendant.

## INVESTIGATION RESULTS

First, the Court is informed that Defendant James Deloach is no longer assigned to Draper Correctional Facility, and has never been served with summons and complaint in this case, and is due to be dismissed as a matter of law.

Pursuant to ADOC policy, when force is used, a full Incident Report was prepared. (See Exhibit G). A statement was taken by all persons involved and/or witnesses. It was determined that on the night in question, Inmate Johnson was being disruptive during the count. (Exhibit G).

Officer Bradford stated that he observed Officer Boozer talking with Plaintiff about being disruptive. Officers Bradford, Golson and Boozer then escorted Johnson downstairs, and Officer Boozer then left with Plaintiff Johnson to escort him to the Shift Office. Officer Bradford testified further that he did not see Officer Boozer "abuse or slap inmate Johnson". (Exhibit D).

Officer Golson testified that he was assisting Officers Boozer and Bradford in the Dorm A count when he observed Plaintiff Johnson making derogatory statements to Officer Boozer. After the count cleared, Officer Golson states that he then proceeded to the light box, when he heard sounds of a struggle behind him. When turned, he observed Officer Boozer "pulling inmate Johnson from the hallway floor." He observed Inmate Johnson aggressively pulling away from Officer Boozer. When he (Officer Golson) observed Officer Boozer push Inmate Johnson into the wall, he (Officer Golson) immediately rushed over and ordered Inmate Johnson to calm down, which he did. Officer Boozer then continued to escort to the Shift Office. (Exhibit E).

Lt. James Steele testified that he was in the Shift Office when Officer Boozer brought Inmate Johnson into the office. At that time, Inmate Johnson complained to Lt. Steele that Officer Boozer had used excessive force on him while in the presence of other officers. Inmate Johnson was escorted to the medical unit, where a medical examination was conducted. (Exhibits C and G). Lt. Steele began an investigation at that time, including taking statements of all witnesses. Lt.

Steele stated that Officer Boozer ultimately admitted to pushing Inmate Johnson down the hall, and he (Lt. Steele) recommended disciplinary action be taken against Officer Boozer for violation of Administrative Regulation #208, "using abusive or excessive physical force in dealing with an inmate." Officer Boozer was suspended without pay for five (5) days for his actions. (Exhibits A, C and F).

Warden Deloach and Deputy Warden Billups both conducted a full investigation into the allegations of excessive force, including interviewing Inmate Johnson the day after the incident. Officer Boozer did admit to excessively pushing Inmate Johnson down the hallway, for which he was suspended for five (5) days without pay. Deputy Warden Billups states further that their investigation did not corroborate the allegation that Officers Bradford and Golson stood by idly while Officer Boozer abused Inmate Johnson. (Exhibits A, B, C, F and G).

Warden DeLoach stated in his affidavit that he had a long standing policy of insuring that all officers had clear guidelines for when the use of force was appropriate. Additionally, Warden DeLoach mandated annual training of all officers on the proper use of force. (Exhibit A).

## ARGUMENT

Plaintiff does not, with any specificity, allege any actions or inaction on the part of these Defendants that would subject them to liability under 42 U.S.C. §1983.

### *VIACRIOUS LIABILITY/ RESPONDEAT SUPERIOR*

Our initial discussion focuses on the issue of *respondeat superior* liability. The claims asserted in the complaint against Warden Deloach, Deputy Warden Billups and Lt. Steele are clearly predicated on the doctrine of *respondeat superior* and such liability does not exist. *Monell v. New York City Dept. of Social Services,* 43 U.S. 658 (1978); *Smith ex rel. Smith v. Siegelman,* 322 F.3d 1290, 1295 (11th Cir. 2003); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

Plaintiff's complaint against these Defendants appears to be based upon the theory of *vicarious liability* or *respondeat superior*, which is unavailable under Section 1983. *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003).

## *SOVEREIGN IMMUNITY*

Defendants are entitled to Sovereign Immunity. Claims against the State of Alabama and its agencies, officers and agents, under Section 1983, are barred by the Eleventh Amendment to the United States Constitution. *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989); see also *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992). The State of Alabama and all of its services must operate through its agencies, officers and employees. The courts are firm in their holdings that state agencies, officers and employees are absolutely immune from tort liability. *Rutledge v. Baldwin Co. Commission*, 495 So.2d 49 (Ala. 1986). The State of Alabama, its agencies, officers and employees, in their official capacities and individually, are absolutely immune from suit. All Defendants, as an officers, employees, and agents of the Alabama Department of Corrections, are entitled to invoke sovereign immunity from suit. See *DeStafney v. University of Alabama*, 413 So.2d 391 (Ala. 1981).

The Eleventh Amendment to the Constitution of the United States of America bars any claims, including any and all pendente state law claims, against a state or its officials in the absence of the consent of the state. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984) (wherein the Supreme Court of the United States held that the Eleventh Amendment barred any and all state law claims brought in U.S. District Court under pendente jurisdiction, as well as under Section 1983.) Plaintiff in this case has failed to allege, and he offers no evidence whatsoever that there has been a waiver of the State of Alabama's Eleventh Amendment immunity. Therefore, Plaintiff's claims against these Defendants in their official

capacities are all barred for lack of subject matter jurisdiction.

### *QUALIFIED IMMUNITY*

Defendants are entitled to qualified immunity. If defendants are able to show in someway that they were acting in their discretionary authority, the burden then shifts to Plaintiff to show that the Defendants violated clearly established law based upon objective standards. See *Eubanks v. Gerwen*, 40. F.3d 1157, 1160 (11th Cir. 1994). Clearly, Plaintiff has not done so. Plaintiff must allege that these Defendants violated a right clearly established in a fact-specific, particularized sense. *Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rec'd in part on other grounds, sub nom., *Edwards v. Okaloosa County*, 5 F.3d 1431 (11th Cir. 1989). The Eleventh Circuit requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Therefore, to defeat summary judgment Plaintiff must be able to point to cases with "materially similar" facts within the Eleventh Circuit. *Hansen v. Soldenwagner*, 19 F.3d 573, 578 n. 6 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that it truly compels (not just suggest or allow or raise a question about); the conclusion for every like-situated, reasonable government agent that what the Defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A&M University, Bd. of Trustees*, 28 F.3d 1146, 1151 (11th Cir. 1994). There is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Court sitting within the Eleventh Circuit showing under the facts of this case clearly establishing that these alleged actions violated Plaintiff's constitutional rights.

### *ARTICLE V IMMUNITY*

Under Article V, Section 112 of the Alabama Constitution, Defendants are executive officers of the State of Alabama. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Defendants are shielded from suit, whether individually or in their official capacities as an executive officer of the State of Alabama including any constitutional claims, by Article I, Section 14 of the Alabama Constitution. *See Alabama State Docks v. Saxon*, 631 So.2d 943, 946 (Ala. 1994)("[Under] Article I, §14, Alabama Constitution … [s]tate officers and employees, in their official capacities and individually, also are absolutely immune from suit when the action is, in effect, one against the state."). This immunity extends to all the state law claims asserted by the plaintiff. *Alexander v. Hatfield*, 652 So.2d 1142, 1143 (Ala. 1994). *Cf., Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under Section 14 . . . Alabama intended for its state officers to be immune from suit.").

### *8th AMENDMENT DELIBERATE INDIFFERENCE*

#### *CAUSAL CONNECTION*

The language of 42 U.S.C. § 1983 requires proof of a causal connection between the purported actions or omissions of these Defendants and any constitutional deprivation of Plaintiff. *Jones v. Preuit & Mauldin*, 851 F.2d 1321 (11th Cir. 1988). The requisite causal connection may be shown by the personal participation of these Defendants, a policy or custom established by a specifically identified Defendant that results in a deliberate indifference to Plaintiff's rights or a breach of a duty imposed by state or local law. *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986). The complaint fails to allege a causal connection between the purported custom or policy

and alleged injury or harm to Plaintiff.

<em>DELIBERATE INDIFFERENCE</em>

Inmate Johnson complains that Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his protection needs. The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. See *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).

While "[t]he Constitution does not mandate comfortable prisons, it does not permit inhumane ones." (*Id.*) (Internal citations omitted.). The Eighth Amendment requires prison officials to provide humane conditions of confinement. They are to ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. (*Id.*) (See *Hudson v. Palmer*, 468 U.S. 517, 526-57 (1984)). However, not every governmental action affecting the interest or well-bring of a prisoner is to be scrutinized by the courts; rather, [a]fter incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986)(quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)) (internal quotation marks omitted).

The government has an obligation to provide medical care to those it incarcerates. See *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to the serious medical needs of inmates constitutes the unnecessary and wanton infliction of pain prohibited by the Constitution. *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In *Estelle*, the Supreme Court held that a prison physicians' negligence in diagnosing or treating a medical condition was not sufficient to establish a claim of deliberate indifference under the Eighth Amendment. *Estelle*, 429 U.S. at 106. Medical malpractice is not a constitutional violation simply because the victim is a

prisoner. (*Id.*). Clearly, the obvious care provided to Plaintiff was neither inhumane nor involves the unnecessary and wanton infliction of pain.

Plaintiff must establish acts or omissions of any Defendant sufficiently harmful to evidence deliberate indifference to serious medical needs. (*Id.*); see also *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). The Supreme Court noted in *Estelle* that the plaintiff's primary allegation was that more should have been done to diagnose and treat a back injury. *Id.* at 107. In *Estelle*, the Court explained, a medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most, it is medical malpractice . . . . *Id.* Deliberate indifference to an inmates' serious medical needs is shown when prison officials have prevented [him] from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). There is absolutely no evidence that any Defendant prevented Plaintiff from receiving medical treatment. On the contrary, the evidence is that Plaintiff received medical treatment.

The Supreme Court, in the case of *Wilson v. Seiter*, 501 U.S. 294, 301-305 (1991), in discussing the "deliberate indifference" standard, stated that prison officials mere negligence does not equal deliberate indifference. See also *Riccardo v. Rausch*, 375 F.3d 521, 525-27 (7th Cir. 2004), which holds that a prison officials' failure to alleviate a significant safety risk did not rise to the level of deliberate indifference. The *Riccardo* court held that even if a jury could conclude that the official should have known of the risk, "reasonableness" is a negligence standard and negligence does not give rise to an Eighth Amendment claim.

A negligent act or omission will not support a claim under Section 1983. *Ray v. Foltz*, 370 F.3d 1079 (11th Cir. 2004). See also *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791, 794 (11th Cir. 1987).

It is deliberateness and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring control over a tumultuous cellblock. *Whitley*, 475 U.S. at 319.

Plaintiff fails to aver any set of facts which rise to the level of "deliberate indifference."

This argument is extended further due to the prison environment. When "evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. Although this deference 'does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987)(quoting *Whitley*, 475 U.S. 312 (1986)). "To establish a viable eighth amendment claim, the evidence must show that the measure taken inflicted unnecessary and wanton pain and suffering or was totally without penological justification." *Ort*, 813 F.2d at 322. Other citations omitted. Plaintiff has failed to demonstrate facts which rise to the level of a constitutional deprivation.

In order to succeed on a claim that prison working conditions violated the Plaintiff's Eighth Amendment rights, Plaintiff must first prove that conditions were, objectively, sufficiently serious, and that the Defendant acted with sufficiently culpable state of mind so as to constitute deliberate indifference to Plaintiff's health or safety by acting or failing to act despite knowledge of such substantial risk of serious harm. *Stephens v. Johnson* 83 F.3d 198 (8th Cir. 1995).

### *REASONABLE FORCE/DE MINIMIS FORCE*

Defendants note that "central to all other corrections goals is the institutional

11

consideration of internal security within the corrections facilities themselves." *Pell v. Procunier*,

417 U.S. 817, 823 (1974)

> [t]he management by a few guards of large numbers of prisoner, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973).

Whenever prison officials are accused of excessive force, the core inquiry is set forth in

*Whitley,* 475 U.S. 312 (1986): "whether the force was applied in a good-faith effort to maintain

or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503

U.S. 1 (1992). Liability requires a showing by the plaintiff that there was no plausible basis for

the official belief in the necessity for using the degree of force employed. *Whitley*, 475 U.S. at

323. The Eighth Amendment's prohibition against cruel and unusual punishment is triggered

when an inmate is subjected to "unnecessary and wanton infliction of pain". *Bennett v. Parker*,

898 F.2d 1530, 1532 (11th Cir. 1990). An evaluation of the conduct of prison officials' conduct,

the court must keep in mind the paramount concerns of maintaining order and discipline in an

often    dangerous    and    unruly    environment.    *Ort,*    813    F.2d    318..

Several factors identified by the *Whitley* Court control a court's decision on whether a

prison guard has used excessive force: (1) the need for the application of force; (2) the

relationship between the need and amount of force used; and (3) the extent of the injury inflicted

upon the prisoner. *Whitley*, 465 U.S. at 321.

As there was only minor injury, Defendants submit that Plaintiff cannot establish the

objective and subjective components of an Eighth Amendment violation. (See *Brown v. Croce*,

967 F.Supp. 101 (S.D.N.Y. 1997), holding that an officer who twice slapped an inmate in the face,

which resulted in no physical harm, constitutes a de minimis use of force not actionable under the Eighth Amendment).

## CONCLUSION

Wherefore these premises considered, Defendants request that this Court dismiss Plaintiff's claims.

Respectfully submitted,
KIM T. THOMAS (THO115)
DEPUTY ATTORNEY GENERAL
GENERAL COUNSEL


/s/ Neal P. Conner
NEAL P. CONNER (CONN2024)
ASSISTANT GENERAL COUNSEL

**ADDRESS OF COUNSEL:**

Alabama Department of Corrections
Legal Division
Post Office Box 301501
301 South Ripley Street
Montgomery, AL   36130-1501
(334)353-3889

## CERTIFICATE OF SERVICE

I do hereby certify that on the 7th day of September, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system,

And I hereby certify that I have mailed a copy of the forgoing via United States Mail properly addressed, postage prepaid first class to:

Jasmon Corde Johnson AIS#248192
Staton Correctional Facility
P. O. Box 56
Elmore, AL 36025

/s/ Neal P. Conner
NEAL P. CONNER (CONN2024)
ASSISTANT GENERAL COUNSEL

13

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

JASMON CORDE JOHNSON,    )
AIS #248192,    )
    )
    **Plaintiff,**    )
    vs.    )    **CIVIL ACTION NO.**
    )    **2:07-CV-614-WKW**
STATE OF ALABAMA    )
DEPARTMENT OF CORRECTIONS,    )
et al.    )
    **Defendants.**    )

## AFFIDAVIT

Before me, the undersigned authority, personally appeared James DeLoach, who after being first duly sworn, did depose and state as follows:

On March 5, 2007 at 12:30 a.m., I was informed of a questionable use of force incident involving Officer Michael Boozer and inmate Jasmon Johnson, #248192. I instructed that Officer Boozer be reassigned to the non-inmate contact post. On the morning of March 5, 2007, I interviewed Plaintiff Johnson regarding his confrontation with Defendant Boozer. Based on Plaintiff Johnson's statement, I requested that an investigation into the possible use of excessive force be conducted by the ADOC investigation division. Based on my informal investigation and the findings of the departmental investigation, I recommended that Defendant Boozer be suspended without pay for five working days for use of excessive force on Plaintiff Johnson. (See attached)

As Warden of the Draper Correctional Facility, I have insured that all officers had clear guidelines for when use of force was appropriate. (See attached) Additionally, all officers under my supervision received annual training regarding the proper use of force.



DEFENDANT'S EXHIBIT
A

The Complaint is without merit as to the Plaintiff's claim that I showed disregard for his safety and well being.   I would ask that this action be dismissed.

James H. DeLoach

SWORN TO and subscribed before me on this the 6th day of September, 2007.

Notary Public

My Commission Expires: 3/27/2011



# State of Alabama
# Department of Corrections

Alabama Criminal Justice Center
301 South Ripley Street
P O Box 301501
Montgomery, AL 36130-1501
(334) 353-3883



**BOB RILEY
GOVERNOR**

**RICHARD F. ALLEN
COMMISSIONER**

April 25, 2007

Acknowledge Receipt
Date:

4-27-07

Mr. Michael P. Boozer, CO
Draper Correctional Facility
Elmore, Alabama 36025

Dear Mr. Boozer:

After having reviewed the recommendation of Warden James DeLoach, your waiver of a due process disciplinary hearing and your overall work record, you are hereby suspended without pay for a period of five (5) days to be effective May 2, 2007 through May 6, 2007 inclusive. You will be charged leave without pay (LWOP) for your off days and will return to duty on May 9, 2007.

On March 4, 2007 you were involved in a verbal altercation with an inmate at Draper Correctional Facility. You admitted to the Captain and Lieutenant that you became angry with the Inmate and used excessive force against him (the Inmate) by pushing him in the direction of the shift office continuously. Your actions caused the Inmate to loose his balance and fall to the floor. Your actions were also a direct violation of the Warden's directives on the Use of Force/Abuse of Inmates dated February 1, 2000.

Your actions constitute a violation of the following standards under Administrative Regulation 208, Employees Standards of Conduct and Discipline:

1. Employees shall respond promptly to directions and instructions of supervisor. (Section V, Paragraph A3)

2. Employees shall observe all laws, rules and regulations. (Section V, Paragraph A7)

3. Employees shall not abuse inmates in any manner. (Section V, Paragraph C5)

Page 2
Mr. Michael P. Boozer


In determining the appropriate corrective action for the above violations, I have considered the following infraction:

Abusive or excessive physical force in dealing with inmates.    (Administrative Regulation 208, Annex H, Number 27)

A review of your overall work record reveals the following active corrective action:

November 29, 2006:                 Suspension, failure to report to work.

The intent of this action is to emphasize the necessity for you to follow rules and regulations.  Any similar infractions after this incident may result in further corrective action.  Hopefully, your actions in the future will meet standards.

Sincerely,

Richard F. Allen
Commissioner

RFA:puf

CC:    Mrs. Jackie Graham, State Personnel Director
       Warden James DeLoach, Draper Correctional Facility
       Mrs. Dora Jackson, Departmental Personnel Director



STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
DRAPER CORRECTIONAL CENTER
P.O. BOX 1107
ELMORE, AL. 36025

DON SIEGELMAN
GOVERNOR

MICHAEL W. HALEY
COMMISSIONER

February 1, 2000

M E M O R A N D U M

FROM: James H. DeLoach, Warden

TO:     All Security Personnel

RE:     Use of Force/Abuse of Inmates

I have observed for sometime now that this facility has an alarming number of uses of force incidents. In too many of these incidents, the use of force have been questionable.

Be advised effective immediately and until further notice, prior to the use of force, an on duty supervisor will be called to the scene to access the situation. The exceptions to this shall be:

1. Self-defense.
2. To prevent injury to a person or property.
3. To prevent an escape.

Each shift commander is to insure that all of his/her officers are made aware of this policy directive.

JHD.dfc

Cc: File
    Warden Cummins
    Capt. Patterson
    All Shifts
    Sgt. Graham

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JASMON CORDE JOHNSON, 248192,
PLAINTIFFS

                                       CASE NUMBER: 2:07CV614-WKW

V.

JAMES DELOACH, et al.,

DEFENDANTS

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Phyllis Billups who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Phyllis Billups, and I am presently employed as Warden II with the Alabama Department of Corrections, Draper Correctional Center, Elmore, Alabama. I am over nineteen (19) years of age.

The plaintiff in this action, Jasmon Johnson B/248192, alleges that I, Phyllis Billups showed a disregard for his safety and well being. Inmate Johnson also states that nothing has been done to Officer Boozer. Inmate Johnson's allegations are untrue. Associate Commissioner James DeLoach and I met with Inmate Johnson and talked to him about the incident at length the day after it occurred. Inmate Johnson was instructed by Mr. DeLoach to write a statement concerning the incident. Inmate Johnson wrote a statement and signed it. An investigation was conducted into the allegations made by Inmate Johnson. Officer Boozer admitted that he used excessive force on Inmate Johnson by pushing him to the Shift Office continuously causing him to lose his balance and fall to the floor. Officer Boozer received a five-day suspension for his actions, which is in accordance with our Administrative Regulation #208 for first offense. Inmate Johnson alleges that Officers Bradford and Golson watched the incident occur but did not do anything to intervene. The investigation did not reveal that this allegation occurred. Officer Golson's written statement states that he immediately approached Officer Boozer and

1



DEFENDANT'S
EXHIBIT
B

Inmate Johnson to assist on the hall when he recognized there was an incident taking place. Inmate Johnson also alleges that he has been suffering from medical problems with his Hyperthyroidism as a result of the incident with Officer Boozer. I have spoken with the Health Service Administrator, Ms. Michelle Sagers. Ms. Sagers states that Inmate Johnson had a problem with Hyperthyroidism before the incident and after the incident. Ms. Sagers states that Inmate Johnson has not been in compliance with his medication for his condition.

I have not violated Inmate Johnson's civil rights in any way.

Warden II Phyllis Billups
Draper Correctional Center

State of Alabama
Elmore County

Sworn to and subscribed before me and under my hand and official seal this the 27th day of July 2007.

Notary Public
My comm. expires 4/2/2011

2

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DISTRICT

**Jasmon Corde Johnson, #248192**
**PLAINTIFF**

**CASE NUMBER: CV-614-WKW**

**V.**

**James DeLoach, et al.,**

**DEFENDANTS**

### A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared James Steele who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is James Steele, and I am presently employed as a Correctional Lieutenant with the Alabama Department of Corrections, Draper Correctional Center, Elmore, Alabama. I am over nineteen (19) years of age.

On 3/04/07, at approximately 10:45 P.M., Officer Michael Boozer escorted inmate Jasmon Johnson, B/248192 into the Shift Commander's office. At this time, inmate Johnson alleged that Officer Boozer had used excessive force against him, in the presence of several other officers. I, Lieutenant James E. Steele, conducted an investigation into the alleged incident by questioning several officers and having each to write a statement concerning the incident. Inmate Johnson was escorted to the Health Care Unit for a medical examination. He was later returned to the Shift Commander's Office where inmate Johnson was given paper and pencil, and allowed to write a statement of the incident in his own words. I, Lieutenant Steele, completed an incident report of the incident and forwarded the results of the investigation to my immediate supervisor, Captain Larry Floyd.

On 03/08/07, during questioning, Officer Boozer did admit to Captain Larry Floyd and Lieutenant Steele TO USING EXCESSIVE FORCE ON INMATE Johnson. I recommended disciplinary action for Officer Boozer for a violation of Administrative Regulation #208, Annex

1



DEFENDANT'S EXHIBIT C

H # (27) Abusive or Excessive Physical Force in Dealing with Inmates.   Officer Boozer was suspended for five (5) days for his action.

*Lt. James E. Steele*

**Lieutenant James Steele**
**Draper Correctional Center**

**State of Alabama**
**Elmore County**

    Sworn to and subscribed before me and under my hand and official seal this the 9th days of July 2007.

*Wayne S. Munroe*

**Notary Public**
**My comm. expires** 4/2/2011

2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

Jasmon Corde Johnson, #248192
PLAINTIFF

CASE NUMBER: CV-614-WKW

V.

James DeLoach, et al.,

DEFENDANTS

### A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Robert Bradford who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Robert Bradford, and I am presently employed as a Correctional Officer with the Alabama Department of Corrections, Draper Correctional Center, Elmore, Alabama. I am over nineteen (19) years of age.

On 3/4/07, at approximately 10:40pm, I CO Robert Bradford, observed Officer Michael Boozer talking to inmate Jasmon Johnson, B/248192, about being disruptive during the count. Once the count cleared, at approximately 10:45pm, Officers Golson, Boozer and I escorted inmate Johnson downstairs, CO Boozer stated that he was going to escort inmate Johnson to the shift office. Officer Boozer and inmate Johnson departed the Dorm enroute to the shift office.


DEFENDANT'S
EXHIBIT
D

**At no time did I observe Officer Boozer abuse or slap inmate Johnson.**

*Robert Bradford*
**Correctional Officer Bradford**
**Draper Correctional Center**

**State of Alabama**
**Elmore County**

Sworn to and subscribed before me and under my hand and official seal this the 13th day of July 2007.

*Dwayne S. Mimms*
**Notary Public**
**My comm. expires** 4/2/2011

2

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DISTRICT

Jasmon Corde Johnson, #248192
PLAINTIFF

CASE NUMBER: CV-614-WKW

V.

James DeLoach, et al.,

DEFENDANTS

### A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared David Golson who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is David Golson, and I am presently employed as a Correctional Officer with the Alabama Department of Corrections, Draper Correctional Center, Elmore, Alabama. I am over nineteen (19) years of age.

On 3/4/2007, at approximately 10:45pm, I, Officer David Golson was assisting Officer Robert Bradford and Officer Michael Boozer with counting A Dorm. Inmate Jasmon Johnson, B/M 248192, began to make derogative statements at Officer Boozer for ordering the inmates from the bathroom. After count cleared, Officers Boozer, Bradford and myself escorted inmate Johnson downstairs. I let Officer Boozer and inmate Johnson out of A Dorm enroute to the Shift Office. I proceeded to the light box to turn the lights out in A Dorm, when I heard a noise (the sound of a struggle) behind me. I turned to investigate the disturbance and observed Officer Boozer pulling inmate Johnson from the hallway floor near the Administrative Barber Shop. Inmate Johnson then turned towards Officer Boozer in an aggressive manner pulling away from Officer Boozer. Officer Boozer then pushed inmate Johnson to the wall with his (Officer Boozer's) right hand. I immediately rushed over and order inmate Johnson to calm down and to report to the Shift Office as ordered by Officer Boozer. Inmate Johnson calmed down. Officer Boozer then continued to escort inmate Johnson to the Shift Office. I then returned to A Dorm.



DEFENDANT'S
EXHIBIT
E

**Any other allegations that inmate Johnson has claimed against me are untrue.**

**Correctional Officer David Golson
Draper Correctional Center**

**State of Alabama
Elmore County**

Sworn to and subscribed before me and under my hand and official seal this the 13th day of July 2007.

Notary Public
My comm. expires 4/2/2011

2

## IN THE UNITED STATES DISCTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

JASMON CORDE JOHNSON, #248192, )
Plaintiff,                       )
                                 )
v.                               )        CASE NO.: 2:07CV614-WKW
                                 )
JAMES DELOACH, et al.,           )
Defndants.                       )

### AFFIDAVIT

Before the undersigned authority, a Notary Public in and for the state of Alabama

at large, personally appeared the affiant Michael P. Boozer, who being known to me and

being first duly sworn, deposes and says as follows:

My name is Michael P. Boozer. I am over the age of nineteen (19). I am presently

employed by the Alabama Department of Corrections at Draper Correctional Center as a

Correctional Officer.

On March 4, 2007, I was assigned to Dorm A along with Officers Robert

Bradford and David Golson as security rovers. At approximately 10:45 p.m., I was

preparing Dorm A for an official institutional count. During this time, Inmate Johnson

was being disruptive and uncooperative by refusing to remain quiet. After being

specifically directed to be silent, Inmate Johnson became insubordinate towards me,

stating that he could not be made not to laugh if he wanted to do so.

I then ordered Inmate Johnson to get dressed and proceed to the front of Dorm A

and wait there until the count had been reported. Once the count was completed, I

attempted to verbally counsel Inmate Johnson regarding the importance of inmates

remaining silent and still during the counting process. Inmate Johnson continued to be

1



uncooperative and insubordinate by refusing to be quiet, despite several orders to be quiet.

After the count had cleared, I proceeded to escort Inmate Johnson to the shift office. We had only taken about ten steps into the hallway when I remembered that I needed to notify Lt. James Steele that I was bringing an inmate to the shift office. I returned with Inmate Johnson back to Dorm A, where I then called Lt. James Steele via radio and advised him that I needed to escort Inmate Johnson to the shift office. Upon receiving permission to escort Inmate Johnson to the shift office, I then proceeded back towards the shift office with Inmate Johnson.

While I was escorting Inmate Johnson to the shift office, he became confrontational and turned around to face me in an aggressive manner. I then grasped his left shoulder with my right hand to place him in the escort position, but he repeatedly turned and was confrontational as I continued to direct him towards the shift office. Inmate Johnson stumbled and nearly fell, but I held his arm to prevent him from falling. Upon regaining his balance, he again turned to face me. I returned him to the escort position again, and we continued to proceed to the shift office. I reported the incident to Lt. James Steele.

I admitted to my supervisors, Captain Larry Floyd and Lt. James Steele, that I continually pushed Inmate Johnson towards the shift office. I agreed to waive my due process administrative hearing and received a five-day suspension without pay as a result of this incident.

Any and all other allegations made by the Plaintiff are hereby denied.

**Further affiant saith not.**

2

Dated this the *15* day of July, 2007.

_____
MICHAEL P. BOOZER
Affiant


STATE OF ALABAMA          )
                          )
ELMORE COUNTY             )


Before the undersigned authority appeared, Michael P. Boozer, Affiant, who is personally known to me, after being first duly sworn does state under oath that the foregoing statements are true and correct to the best of his knowledge.

_____
MICHAEL P. BOOZER
Affiant

Sworn to and subscribed before me this the *15th* day of July, 2007.

_____
ERICA K. BOOZER
Notary Public

My commission expires: *3/14/11*.


3

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: Draper Correctional Center | 2. Date: 3/ 4/2007 | 3. Time: 10:45 PM | 4. Incident Number: DCC 07-0396 | Class Code: C |
|---|---|---|---|---|

| 5. Locaton Where Incident Occurred Hallway near Dorm A | 6. Type of Incident: Informational- Alleged Abuse |
|---|---|

| 7. Time Incident Reported: 3/5/2007 @ 12:30 AM | 8. Who Received Report: *Larry Floyd, Cpt* Captain Larry Floyd |
|---|---|

**9. Victims:**

| | Name | | No. | AIS # |
|---|---|---|---|---|
| a. | Jasmon Johnson | | No. | B / 248192 |
| b. | | | No. | |
| c. | | | No. | |

| 10. Suspects: | Name | | AIS # | 10. Witnesses: | Name | | AIS # |
|---|---|---|---|---|---|---|---|
| a. | Michael Boozer | No. | CO | a. | | No. | |
| b. | | No. | | b. | Robert Bradford | No. | CO |
| c. | | No. | | c. | David Golson | No. | CO |
| d. | | No. | | d. | Timothy Owens | No. | CO |
| e. | | No. | | e. | Eddie Phillips | No. | CO |
| f. | | No. | | f. | | No. | |
| g. | | No. | | g. | | No. | |

**PHYSICAL EVIDENCE:**

**12. EvidenceType:**
N/A

**13. Description of Evidence:**
N/A

**14. Chain of Evidence:**
a. N/A
b.
c.
d.

**15. Narrative Summary:**   On 3/4/07, at approximately 10:45 PM, Officer Michael Boozer, who was assigned to Dorm A, called for Lieutenant James Steele, via radio, and advised he (Boozer) had an inmate he needed to bring to the shift office. At this time, the first institutional count on the Third Shift had just cleared. Lieutenant Steele informed Officer Boozer to bring the inmate to the shift office. Upon entering the Shift Commander's Office, Officer Boozer explained that inmate Jasmon Johnson, B/248192, assigned to A2- 58A, was very disorderly during count time. Officer Boozer further explained that he had to be told several times to be quiet and to hold the noise down. Lieutenant Steele questioned inmate Johnson concerning his disorderly behavior during count time. Inmate Johnson explained to Lieutenant Steele that he (Johnson) was sitting on his assigned bed. Officers Robert Bradford and David Golson could not get the count right, and Officer Boozer cleared about four (4) inmates from the bathroom area. One of the inmates was talking at Officer Boozer. Inmate Johnson was laughing at his home boy, who was on his bed across the cell. Inmate Johnson explained that he was not laughing at Officer Boozer, but Officer Boozer got mad. When they got the count right, they escorted inmate Johnson downstairs until the count cleared. All three officers (Boozer, Bradford, and Golson) were counseling him about laughing out and being disorderly during the count. Inmate Johnson continued his negative behavior by talking back to Officer Boozer during counseling. Inmate Johnson further explained that Officer



DEFENDANT'S EXHIBIT
G

COPY to Deputy Commissioner fo Operations (Class A and B ONLY)
COPY to Central Records Office

**ADOC Form 302-A - June 1, 2005**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: Draper Correctional Center | Incident Number: DCC 07-0396 | Class Code: C |
|---|---|---|
| Date: 3/ 4/2007 | Type of Incident: Informational- Alleged Abuse | |

15. Narrative Summary (Continued)  Page No.: 2 of 8

escorted him out of the cell, onto the hallway, near the shoe shine room, and pushed him (Johnson) against the wall and told inmate Johnson to take his eyeglasses off and slapped him. Inmate Johnson further stated that Officer Boozer punched him on the side of his leg with his (Boozer's) knee, and pushed him (Johnson) to the floor, causing his eyeglasses to break (frame). Officer Boozer denied any physical contact with inmate Johnson, except to direct inmate Johnson up the hall to the shift office. Inmate Johnson explained that Officer Boozer took him back to Dorm A until he (Johnson) requested to come see Lieutenant Steele. At this time, Officer Boozer called for Lieutenant Steele, via radio. At approximately 11:15 PM, Officer Timothy Owens escorted inmate Johnson back to Dorm A to get his shirt and identification card, before going to Staton Health Care Unit. Nurse Cynthia Jackson examined inmate Johnson and completed a medical body chart with no signs of injuries noticed, nor treatment needed (See attached medical report). At approximately 12:10 AM, on 3/5/07, inmate Johnson was returned to Draper's Shift Office, where he was allowed to write a statement of the incident in his own words. Lieutenant Steele questioned Officers Golson and Bradford concerning the incident. Officer Bradford denied observing any physical contact by Officer Boozer on the hall. Officer Golson stated that he was at the light box, with his back turned, when he heard a noise. Upon looking around, Officer Boozer was helping inmate Johnson up from the floor. At this time, they returned to Dorm A (See attached statement). Officer Owens was assigned to Dorm B and Officer Eddie Phillips, the Front Cubicle Officer, also witnessed Officer Boozer on the hallway with inmate Johnson, but denied observing any physical contact by Officer Boozer (See attached statements). Lieutenant Steele collected a written statement from Officer Boozer, who never stated to Lieutenant Steele that inmate Johnson was aggressive, at any time, toward him (Boozer). Officer Boozer stated that he placed his hand on inmate Johnson's shoulder in order to direct him in the direction of the shift office. Inmate Johnson stumbled and almost fell. Officer Boozer grasped inmate Johnson by his arm to prevent the fall (See attached statement). Lieutenant Steele notified Captain Larry Floyd and Warden III James Deloach of the alleged incident, at approximately 12:30 AM, on 3/5/07. Officer Boozer was reassigned from Dorm A to Tower #1 for the remainder of his tour of duty. Inmate Johnson was allowed to remain on his assigned bed in Dorm A, with no disciplinary action taken, pending further investigation.

  On 3/8/07, Captain Floyd and Lieutenant Steele questioned Officer Boozer concerning the alleged abuse, at which time, Officer Boozer did admit to Captain Floyd and Lieutenant Steele to using excessive force on inmate Johnson, by pushing inmate Johnson to the shift office continuously, therefore, causing inmate Johnson to loose his balance and fall to the floor. Officer Boozer further admitted that he knew he was wrong for his actions. Captain Floyd advised Officer Boozer that disciplinary action will be forthcoming.

*Lt. James E. Steele*

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner fo Operations (Class A and B ONLY)
COPY to Institutional File                                                 COPY to Central Records Office
                                                                          ADOC Form 302-B - June 1, 2005

## STATEMENT OF INMATE JASMON JOHNSON

My name is Jasmon Johnson A. I. S. #248192. It started with me sitting on my rack A2- 58A. I started laughing at a friend that sleeps across the floor from me. And Officer Boozer asked me what was funny. And I said I was just laughing at a friend. He told me he would give me something to laugh about. And told me to put my shoes on. I told him I already had my shoes on, which were house shoes. I asked what did I do and he just said put my other shoes on and go downstairs. So I put my shoes on and Officer Goldstien, Officer Boozer, and the new young officer escorted my downstairs to the gate. Officer Boozer told me to sit down on the stool by the phone. After count cleared, he told me to get up and come with him. So when I walked out into the hall, the other officer followed me. And Officer Boozer told me to put my back against the wall by the shoe shine room and to take my glasses off. Then he raised his hand and slapped me on my left side of my head and face. Then he grabbed me around my neck and started choking me, and then slammed me into the pole on the wall. And started choking me again and told me I won't laugh at anything else. Then he snatched me up from the ground and told me to get my glasses up that he broke and get back in the cell. And all the officers were just looking at me in the hallway. And the Officer Williams aka "Big Will" walked through and told Officer Boozer to leave me alone and let me go back to my rack. And then I said I need to go to the shift office and go to the health care.

*Jasmon Johnson #248192*
Inmate Jasmon Johnson #248192

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: Draper Correctional Center | Incident Number: DCC 07-0396 | Class Code: C |
|---|---|---|
| Date: 3/ 4/2007 | Type of Incident: Informational- Alleged Abuse | |

| 15. Narrative Summary (Continued)  Page No.: 3 of 8 |
|---|

# <u>Witness Statement</u>

CO Michael Boozer

On March 4, 2007, I, Officer Michael Boozer, was assigned to Dorm A, as a security rover. At approximately 10:40 PM, inmate Jasmon Johnson, B/248192, was being disruptive during count, by laughing out loud. I instructed inmate Johnson to be quiet. Inmate Johnson then became confrontational and insubordinate towards me, by stating that he can laugh if he wants to and that he couldn't be made to not laugh. I then ordered inmate Johnson to get dressed and go to the bars, at the front of the cell. I then attempted to verbally counsel inmate Johnson, but inmate Johnson was being uncooperative, by trying to talk over me and refusing to be quiet, after I gave several orders to inmate Johnson for him to be quiet and to listen. I then called for Lieutenant James Steele via radio and advised that I would be escorting inmate Johnson to the shift office. Inmate Johnson then became more animated and uncooperative, specifically stating, "What are you gonna do now, y' all gonna whoop me down there?" and kept turning around to face me. I then grasped inmate Johnson's left shoulder with my right hand to turn inmate Johnson around to face the directions toward the shift office. Inmate Johnson stumbled, almost falling. Inmate Johnson regained his balance, faced me, but stopped all resistance and continued to the shift office. At approximately 10:45 PM, I reported the incident to Lieutenant Steele.

CO Michael Boozer

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner fo Operations (Class A and B ONLY)
          COPY to Institutional File          COPY to Central Records Office

**ADOC Form 302-B - June 1, 2005**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: Draper Correctional Center | Incident Number: DCC 07-0396 | Class Code: C |
|---|---|---|

| Date: 3/ 4/2007 | Type of Incident: Informational- Alleged Abuse | |
|---|---|---|

15. Narrative Summary (Continued)  Page No.: 4 of 8

## <u>Witness Statement</u>

CO Robert Bradford

At approximately 10:30 PM, Officers David Golson, Michael Boozer, and I started the count in Dorm A. During count time, Dorm A got noisy. At that time, Officer Boozer instructed Dorm A to quiet down. At approximately 10:40 PM, I, Officer Robert Bradford, observed Officer Boozer talking to inmate Jasmon Johnson, B/248192, about being disruptive during the count. Once the count cleared, at approximately 10:45 PM, Officers Golson, Boozer, and I escorted inmate Johnson downstairs. At approximately 10:46 PM, I started back roving my dorm.

CO Robert Bradford

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division       COPY to Deputy Commissioner fo Operations (Class A and B ONLY)
COPY to Institutional File                                            COPY to Central Records Office

ADOC Form 302-B - June 1. 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: Draper Correctional Center | Incident Number: DCC 07-0396 | Class Code: C |
|---|---|---|

| Date: 3/ 4/2007 | Type of Incident: Informational- Alleged Abuse |
|---|---|

15. Narrative Summary (Continued)  Page No.: 5 of 8

# <u>Witness Statement</u>

CO David Golson

On March 4, 2007, at approximately 10:45 PM, I, Officer David Golson was assisting Officer Robert Bradford and Officer Michael Boozer with counting A Dorm. While counting A Dorm upstairs, Officer Golson and Officer Bradford did not get the same count. Officer Boozer then ordered all inmates in the upstairs bathroom to exit the bathroom and report to their assigned beds. Inmate Jasmon Johnson B/M 248192, who was already on his assigned bed, began to make derogative statements to Officer Boozer for ordering the inmates from the bathroom. Officer Boozer then ordered inmate Johnson to report downstairs and wait for him (Officer Boozer) by the downstairs bars. Officer Golson advised Officer Boozer to have inmate Johnson to remain on his (Inmate Johnson's) assigned bed until count cleared.

☐After count cleared Officers Boozer, Golson, and Bradford proceeded downstairs with inmate Johnson. Officer Golson had the keys to the front gate and let Officer Boozer and Inmate Johnson out of A Dorm. Approximately one (1) minute later, Officer Boozer returned to A Dorm and Officer Golson let them back inside A Dorm. After re-entering A Dorm, Officer Boozer notified Lt. James Steele, via tow way radio, that he (Officer Boozer) had an inmate he needed to bring to the Shift Office. Lt. Steele instructed Officer Boozer to bring the inmate to the Shift Office.

☐Officer Golson let Officer Boozer and Inmate Johnson out of A Dorm enroute to the Shift Office. Officer Golson proceeded to the light box to turn the lights out in A Dorm, when Officer Golson heard a noise (the sound of a struggle) behind him. Officer Golson turned to investigate the disturbance and observed Officer Boozer pulling inmate Johnson from the hallway floor near the Administrative Barber Shop. Officer Boozer had inmate Johnson by the right upper arm area. Inmate Johnson then turned towards Officer Boozer in an aggressive manner pulling away from Officer Boozer. Officer Boozer then pushed inmate Johnson to the wall with his (Officer Boozer's) right hand near inmate Johnson's upper torso and lower neck area. Officer Golson immediately rushed over and ordered inmate Johnson to calm down and to report to the Shift Office as ordered by Officer Boozer. Officer Boozer then continued to escort inmate Johnson to the Shift Office.                    End of Statement

CO David Golson

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | | Incident Number: | Class Code: |
|---|---|---|---|
| Draper Correctional Center | | DCC 07-0396 | C |
| Date:<br>3/ 4/2007 | Type of Incident: Informational- Alleged Abuse | | |

15. Narrative Summary (Continued)  Page No.: 5 of 7

## **<u>Witness Statement</u>**

CO Timothy Owens

I, Officer Timothy Owens, was enroute to the shift office to turn in Dorm B count slip, when I observed Officer Michael Boozer escorting an inmate, later identified as inmate Jasmon Johnson, B/248192, to Dorm A. Upon departing the shift office, I noticed that Officer Boozer and inmate Johnson were no longer on the hall. I returned to my assigned post, Dorm B.

*Timothy Owens* cor
CO Timothy Owens

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner fo Operations (Class A and B ONLY)
COPY to Institutional File          COPY to Central Records Office
ADOC Form 302-B - June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: Draper Correctional Center | Incident Number: DCC 07-0396 | Class Code: C |
|---|---|---|

| Date: 3/ 4/2007 | Type of Incident: Informational- Alleged Abuse | |
|---|---|---|

15. Narrative Summary (Continued)  Page No.: 6 of 7

## **Witness Statement**

CO Eddie Phillips

On March 4, 2007, while conducting a yeast count, I, Officer Eddie Phillips, looked down DCC hallway and saw Officer Michael Boozer escorting an inmate toward the Shift Commander's Office. No other actions observed.

CO Eddie Phillips

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division
COPY to Institutional File

COPY to Deputy Commissioner fo Operations (Class A and B ONLY)
COPY to Central Records Office
**ADOC Form 302-B - June 1, 2005**



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE 3 /4/07 | TIME 1145 ☐ AM ☐ PM | ORIGINATING FACILITY _Draper_ ☐ SIR ☐ PDL ☐ ESCAPEE ☐ ___ | ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT |
|---|---|---|---|

**ALLERGIES** Bactrim

CONDITION ON ADMISSION
☒ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

VITAL SIGNS: TEMP 98.9 ORAL RECTAL    RESP. 22    PULSE 99    B/P 130/70    RECHECK IF SYSTOLIC <100> 50 ___ /___

| NATURE OF INJURY OR ILLNESS | ABRASION /// | CONTUSION # | BURN XX XX | FRACTURE Z Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|---|

Body chart per DOC request

S= He slapped me in my face, he grabbed and choked my neck, and slammed me on the ground.

PROFILE RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O= Skin w/o to touch, Resp
C/ease ∅ S/S of distress
Noted ∅ signs of bruising
or injury noted to face
or neck VSS WNL

A= Alt in comfort

P= Rel to DOC

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE 3 /4/07 | TIME ☐ AM ☐ PM | RELEASE / TRANSFERRED TO ☒ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☒ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
|---|---|---|---|
| NURSE'S SIGNATURE _Erickson_ | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |

| INMATE NAME (LAST, FIRST, MIDDLE) Johnson Jasmon | DOC# 248192 | DOB 8/22/83 | R/S Bm | FAC. DCC |
|---|---|---|---|---|

PHS-MD-70007    (White – Record Copy, Yellow – Pharmacy Copy)